And we'll proceed to our final case this morning, Peters v. Saul, and again hear from Mr. Duncan. Good morning again, thank you. May it please the court, Dana Duncan on behalf of Gerald Peters. Mr. Peters seeks reversal and remand of the final decision of the Commissioner of Social Security. Two grounds are raised. The ALJ keyed partial weight to the consultative examination of Dr. Sandra King from 2015, specifically rejecting her findings that Peters would have severe limitations in withstanding routine work and stress and adopting to changes. The ALJ in making that finding did not provide good reasons for excluding those severe limitations and the ALJ did not provide or build a bridge between the specific limitations he did adopt and the elements of his hypothetical question and residual functional capacity. The administrative law judge for the second issue gave weight to the three state agency psychologists' opinions. However, those three opinions conflicted with each other. The ALJ never resolved those conflicts and the ALJ never encapsulated specific limitations in the residual functional capacity or hypothetical question from those three doctors. The first issue again is Dr. Sandra King's 2016 evaluation. The court is aware from the record, Dr. King did an evaluation in 2014. Her findings were based upon a mental status examination and her personal observation. Her evaluations in both cases were ordered because of a lack of medical evidence in the record regarding mental limitations for Mr. Peters. She did this except that in that case, she found moderate limitations in work stress and work changes. In 2016, she determined that his condition had deteriorated and raised those to severe levels. Now, the judge indicated in this particular case, the administrative law judge indicated that he decision that she would have severe difficulties in coping was not supported because of the inconsistency with the normal mental status examination findings, the lack of specialized treatment, the limited treatment history, and the claimant's refusal to follow through with treatment recommendations. The ALJ never really did not analyze and I guess the question is on what basis the administrative law judge is determining normal mental status examinations as opposed to a medical expert who had the mental status examination and the observation to make this assessment, the lack of specialized treatment, the lack of treatment history, and the claimant's refusal to follow through. The record is clear in this case to some extent. It's not real clear overall why Mr. Peters did not treat, although I note that record page 405 says in August of 2014, he had little or no insurance. January 9th of 2018, during the testimony, he admitted that he had badger care. In February of 2016, he indicated that he was refusing medication because he had tried many of them and they did not agree with him. He refused blood pressure medication in that same year because of side effects. The court has repeatedly held in cases such as that the judge has a duty and that is in the Social Security ruling 16-3P, which is a policy statement of the commissioner, that the judge has a duty to make these inquiries. Simply rejecting an examining source's opinion on a key provision simply based upon the judge's interpretation of record and based upon a lack of inquiry by the administrative law judge as to why he was not treating and why he was not taking medication is simply insufficient for this court to reject Dr. King's assessment in regards to those two issues. I would like to note also that not only do we have the problems with Dr. King, the judge granted or gave weight to the state agency opinion. He grouped them in one paragraph. He indicated on page 443 that he gave Dr. Warren, Speer, and Jacobson weight. He did not differentiate between them. He did not indicate any limitations or any parts that he did not agree with their opinions. He indicated broad range. Yet, all three of these opinions have different elements and different response and requirements. Dr. Warnick. Is there anything in those opinions, Mr. Duncan, that is inconsistent? Yes. Dr. Speer indicated that Mr. Peters would have moderate limitations in maintaining regular attendance and being punctual. Dr. Jacobs found that he would have moderate limitations in his attendance. The narrative explanation for both doctors did not address either of those two issues pursuant to DeCamp and Moreno. Either that had to be specifically included or the judge had to specifically address why they were not. You have one minute left, Mr. Duncan. Both cases, neither were. Accordingly, even if the judge properly gave weight to the three state agency doctors, he did not cover or address specific issues that were necessary pursuant to case law in this circuit. On that, I will reserve any additional time for rebuttal. Thank you. Ms. Hugo. Your Honors, may it please the court. Megan Hugo on behalf of the Commissioner of Social Security. The ALJ in this case reasonably relied on the medical opinions in the record about how Mr. Peters' mental impairments affected his ability to work. The ALJ included in the residual functional capacity assessment all of the specific limitations identified by the three state agency psychologists and their narrative opinions. The ALJ also included specific limitations that were consistent with all but one of the broad opinions from the consulting examiner, Dr. King. In addition to the medical opinions, the ALJ considered that Mr. Peters was able to work at a higher skill level in the past when he ran his own excavating company with the same long-standing mental impairments. And the ALJ explained that even though Mr. Peters was not engaged in any or taking prescription medicine, his mental status examinations were large and normal. Mr. Peters has not identified any specific functional limitations that the ALJ should have included in the residual functional capacity assessment but did not. Instead, he argues broadly that either the ALJ didn't articulate his decision well enough or invites this court to nitpick in finding consistencies in the opinions where none exist. The court should reject these arguments. With respect to the articulation, this court has emphasized that ALJs only need to minimally articulate the reasons so that a reviewing court can discern their rationale and that decisions should be read with common sense and without nitpicking and that even decisions of less than ideal clarity should be upheld as long as the ALJ's reasoning can be reasonably discerned. And once the court can tell from a common sense reading of the ALJ's decision what the ALJ's rationale was, the issue becomes whether the decision is supported by substantial evidence, which the Supreme Court in Viestek recently reaffirmed is not a high threshold. The ALJ's decision in this case meets those undemanding standards. The ALJ explains that when he evaluated Mr. Peters' functional abilities, he gave great weight to the opinion from the three is not identical, but they all broadly agreed that Mr. Peters could perform simple tasks with reduced interaction with the public in simple, not constant changes. The ALJ also accepted all but one of the opinions from the consulting examiner, Dr. King. Now, Dr. King only identified one specific functional limitation. Like the state agency doctors, Dr. King said that Mr. Peters' ALJ then did what the regulations required him to do. He took these four medical opinions and synthesized them into a residual functional capacity assessment and concluded that Mr. Peters could perform unskilled work involving simple, routine, repetitive tasks, occasional decision making, occasional changes in the work setting, occasional interaction with the public and coworkers, individually performing work tasks, and no fast-paced production work, though end-of-day quotas were permitted. And in addition to the expert opinions, the ALJ explained that Mr. Peters had worked at a higher skill level in the past with the same long-standing mental impairment, and there was no evidence indicating his impairments had worsened since he stopped working, and that even though he refused counseling and medication, his mental status examinations were still relatively normal. Consistent with this court's recent decisions in cases like Burmester, Josephick, Dudley, and Saunders, the court should conclude that the ALJ in this case reasonably relied on the medical expert opinions and other substantial evidence when evaluating Mr. Peters' capacity for work. Now, critically, even though Mr. Peters wants the work to step in now and say that the ALJ's residual functional capacity assessment was insufficient, he hadn't identified any specific functional limitations that the ALJ did not in his case. Now, he points to Dr. King's second opinion regarding severe difficulties with standing routine work stress and adapting to change. Again, it's important to recognize that this is not a specific functional limitation, and it wouldn't be helpful to a vocational expert, even if it had been accepted. The ALJ would have had to translate it into some useful format in a question to a vocational expert, but the ALJ didn't accept that opinion, and he gave several reasons. He said that Dr. King didn't provide any explanation for the new opinion that Peters now would have severe rather than moderate difficulties coping with stress and change, and that the new opinion was inconsistent with other evidence in the record. Counsel didn't really address the first point, other than saying that Dr. King found that his report was consistent with the report of 2014 and September 2016, but that's not in her opinion. She did not provide any explanation for her new opinion that Mr. Peters would now suddenly have severe difficulties, when in January 2014, she only said moderate. And if you look and compare the two reports, they're almost identical. And in fact, he performed slightly better in the second examination and measures of concentration in terms of the fact that he was able to spell the word world properly forwards and backwards. So in this case, the ALJ's reasons for not adopting that second opinion, which was unsupported and unexplained, was reasonable, and the court should reject the invitation to reweigh the evidence in Mr. Peters' favor. With respect to the state agency doctors, again, there's an attempt by counsel to say that these opinions were inconsistent, but really, he's just trying to nitpick these. And if you look at all of their opinions together, there is no inconsistency. While they don't use the identical terminology in their narrative opinions, again, they all agree that he can perform simple tasks with reduced public interaction and simple, not constant changes. I think the focus is on the worksheet portion of the doctor's opinions, which this court has recognized should be considered, but is not more important than the narrative. And the court has recognized that the ALJ is entitled to rely on the narrative opinions as long as there is no conflict with the worksheets. And here, there's no conflict. It appears that the conflict the counsel is identifying is that the doctor said that Mr. Peters would have a moderate limitation in performing detailed tasks and maintaining attention and concentration for extended periods, but you also have to look at all of the check boxes as a whole. The doctors also agree that he would have no significant limitations performing simple tasks. So there's been no conflict with their narrative opinion that says he can maintain attention and concentration for simple tasks for an entire workday and an entire workweek, and also perform some detailed tasks, but not for a full workweek. With regard also to the check boxes, it's just important to note that those do not need to go in the residual functional capacity as counsel had suggested, as long as there are sufficient narrative opinions, and here there are. And if the court has no further questions, I would respectfully request that the court affirm the district court's decision. Thank you. Mr. Duncan, you have two minutes in rebuttal. Thank you, your honor. I would note that the issue of the specific items in section one that I outlined in my initial argument apply in this case because the administrative law judge applied them. On page 443, the judge specifically took the elements from section one of the mental residual functional capacity form contained on the disability determination explanation and applied them. He just didn't explain or provide any of the other limitations that differed between the doctors, provide any explanation for them, did not provide any indication of why they were or were not adopted, and just was silent on it. The issue of substantial evidence is not one of whether it's good enough. It requires some level of articulation to clearly evidence that the judge considered all factors and rendered a sufficient decision. In this case, there is no explanation, and the court should be left to Moreover, we have all three of these state agency opinions were based almost entirely on the record from Dr. King as there was only two entries involving mental health during this period of time from Mr. Peterson's treatment. So, most of these opinions are doing nothing more than relying on Dr. King's assessment. Yet, the administrative law judge can pick and choose and decide that one set of limitations based on her experience and knowledge can be eliminated, and to do so without or for reasons that the judge failed to properly articulate. What we're talking about in these mental claims is not that the mental illness in and of itself is disabling. The issue is whether these specific mental problems in conjunction with his physical problems would result ultimately in the erosion of the occupational base for finding a disability. These are nuances in many cases and require some level of building a puzzle to show the picture of the overall situation. Thank you for your attention. Thank you very much. Thanks to both counsel. The case is taken under advisement, and the court will be in recess. Thank you.